JS 44 (Rev. 08/16)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Dawn Colonni

**(b)** County of Residence of First Listed Plaintiff   Hartford
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

David F. Falvey, Action Advocacy, P.C., One Crouch St., Groton, CT 06340; (860) 449-1510

## DEFENDANTS

Ditech Financial, LLC

County of Residence of First Listed Defendant _____
*(IN U.S. PLAINTIFF CASES ONLY)*

NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☐ 2  U.S. Government Defendant
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

### CONTRACT
- ☐ 110 Insurance
- ☐ 120 Marine
- ☐ 130 Miller Act
- ☐ 140 Negotiable Instrument
- ☐ 150 Recovery of Overpayment & Enforcement of Judgment
- ☐ 151 Medicare Act
- ☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)
- ☐ 153 Recovery of Overpayment of Veteran's Benefits
- ☐ 160 Stockholders' Suits
- ☐ 190 Other Contract
- ☐ 195 Contract Product Liability
- ☐ 196 Franchise

### REAL PROPERTY
- ☐ 210 Land Condemnation
- ☐ 220 Foreclosure
- ☐ 230 Rent Lease & Ejectment
- ☐ 240 Torts to Land
- ☐ 245 Tort Product Liability
- ☐ 290 All Other Real Property

### TORTS

**PERSONAL INJURY**
- ☐ 310 Airplane
- ☐ 315 Airplane Product Liability
- ☐ 320 Assault, Libel & Slander
- ☐ 330 Federal Employers' Liability
- ☐ 340 Marine
- ☐ 345 Marine Product Liability
- ☐ 350 Motor Vehicle
- ☐ 355 Motor Vehicle Product Liability
- ☐ 360 Other Personal Injury
- ☐ 362 Personal Injury - Medical Malpractice

**PERSONAL INJURY**
- ☐ 365 Personal Injury - Product Liability
- ☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability
- ☐ 368 Asbestos Personal Injury Product Liability

**PERSONAL PROPERTY**
- ☐ 370 Other Fraud
- ☐ 371 Truth in Lending
- ☐ 380 Other Personal Property Damage
- ☐ 385 Property Damage Product Liability

### CIVIL RIGHTS
- ☐ 440 Other Civil Rights
- ☐ 441 Voting
- ☐ 442 Employment
- ☐ 443 Housing/ Accommodations
- ☐ 445 Amer. w/Disabilities - Employment
- ☐ 446 Amer. w/Disabilities - Other
- ☐ 448 Education

### PRISONER PETITIONS

**Habeas Corpus:**
- ☐ 463 Alien Detainee
- ☐ 510 Motions to Vacate Sentence
- ☐ 530 General
- ☐ 535 Death Penalty

**Other:**
- ☐ 540 Mandamus & Other
- ☐ 550 Civil Rights
- ☐ 555 Prison Condition
- ☐ 560 Civil Detainee - Conditions of Confinement

### FORFEITURE/PENALTY
- ☐ 625 Drug Related Seizure of Property 21 USC 881
- ☐ 690 Other

### LABOR
- ☐ 710 Fair Labor Standards Act
- ☐ 720 Labor/Management Relations
- ☐ 740 Railway Labor Act
- ☐ 751 Family and Medical Leave Act
- ☐ 790 Other Labor Litigation
- ☐ 791 Employee Retirement Income Security Act

### IMMIGRATION
- ☐ 462 Naturalization Application
- ☐ 465 Other Immigration Actions

### BANKRUPTCY
- ☐ 422 Appeal 28 USC 158
- ☐ 423 Withdrawal 28 USC 157

### PROPERTY RIGHTS
- ☐ 820 Copyrights
- ☐ 830 Patent
- ☐ 840 Trademark

### SOCIAL SECURITY
- ☐ 861 HIA (1395ff)
- ☐ 862 Black Lung (923)
- ☐ 863 DIWC/DIWW (405(g))
- ☐ 864 SSID Title XVI
- ☐ 865 RSI (405(g))

### FEDERAL TAX SUITS
- ☐ 870 Taxes (U.S. Plaintiff or Defendant)
- ☐ 871 IRS—Third Party 26 USC 7609

### OTHER STATUTES
- ☐ 375 False Claims Act
- ☐ 376 Qui Tam (31 USC 3729(a))
- ☐ 400 State Reapportionment
- ☐ 410 Antitrust
- ☐ 430 Banks and Banking
- ☐ 450 Commerce
- ☐ 460 Deportation
- ☐ 470 Racketeer Influenced and Corrupt Organizations
- ☐ 480 Consumer Credit
- ☐ 490 Cable/Sat TV
- ☒ 850 Securities/Commodities/ Exchange
- ☒ 890 Other Statutory Actions
- ☐ 891 Agricultural Acts
- ☐ 893 Environmental Matters
- ☐ 895 Freedom of Information Act
- ☐ 896 Arbitration
- ☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision
- ☐ 950 Constitutionality of State Statutes

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1 Original Proceeding
- ☐ 2 Removed from State Court
- ☐ 3 Remanded from Appellate Court
- ☐ 4 Reinstated or Reopened
- ☐ 5 Transferred from Another District *(specify)*
- ☐ 6 Multidistrict Litigation - Transfer
- ☐ 8 Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
12 U.S.C. §§ 2601, et seq. - Real Estate Settlement Procedures Act (RESPA)

Brief description of cause:
Violations of the Real Estate Settlement Procedures Act (RESPA)

## VII. REQUESTED IN COMPLAINT:

- ☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 75,000.00

CHECK YES only if demanded in complaint:
JURY DEMAND:  ☒ Yes  ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*   JUDGE _____   DOCKET NUMBER _____

DATE
01/14/2019

SIGNATURE OF ATTORNEY OF RECORD
/s/ David F. Falvey

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

**UNITED STATES DISTRICT COURT**
**DISTRICT OF CONNECTICUT**

| | |
|---|---|
| **DAWN COLONNI**<br><br>　　　　　Plaintiff<br><br>　v.<br><br>**DITECH FINANCIAL, LLC**<br>c/o C T Corporation System<br>67 Burnside Ave<br>East Hartford, CT 06108-3408<br><br>　　　　　Defendant. | **COMPLAINT FOR DAMAGES**<br><br>JURY DEMAND ENDORSED HEREON<br><br><br>JANUARY 14, 2019 |

Plaintiff Dawn Colonni, by and through counsel, states as follows for her Complaint against Ditech Financial, LLC:

## INTRODUCTION, PARTIES, JURISDICTION, AND VENUE

1.     Plaintiff Dawn Colonni ("Plaintiff" or "Colonni") is the owner of real property and improvements located at and commonly known as 281 High Street, Mystic, Connecticut 06355 (the "Home").

2.     Colonni has maintained the Home as her primary, principal residence at all times relevant to this matter and continues to maintain the Home as such.

3.     At all relevant times, Plaintiff was a "person" as defined by the Connecticut Unfair Trade Practices Act, Conn. Gen. Stat. § 42-110a, *et seq.* ("CUTPA").

4.     At all relevant times, Plaintiff was a consumer as defined by 15 U.S.C. § 1692a(3) of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692, *et seq.* (the "FDCPA"), who incurred the debt, described *infra*, for personal, family or household services.

5.     Defendant Ditech Financial, LLC ("Ditech") is a limited liability company established under the laws of the State of Delaware. Ditech maintains its principal place of business

1

at 1100 Virginia Drive, Suite 100A, Fort Washington, PA, 19034. Ditech is the servicer for mortgage loans across the United States, including servicing mortgages for properties in the State of Connecticut.

6.     Ditech is the current servicer of a note used to purchase the Home (the "Note") and a mortgage on the Home that secures the Note (the "Mortgage") (hereinafter collectively referred to as the "Loan").

7.     Colonni originated the Loan was with America's Wholesale Lender on or about June 30, 2005. The Loan was ultimately assigned to Federal National Mortgage Association ("Fannie Mae").

8.     Ditech has serviced the Loan since at least June 1, 2013.

9.     Ditech obtained rights to collect on the Loan after it was in default and is therefore a debt collector as defined by 15 U.S.C. §1692a(6).

10.     At all relevant times, Defendant's business included the regular collection of debts using the mail and/or telephone.

11.     At all relevant times, Ditech acted with the full authority of and as the servicing agent for Fannie Mae, the relevant owner of the Loan.

12.     Jurisdiction of claims against Ditech is conferred by 28 U.S.C. § 1331, as this action arises under the Dodd-Frank Wall Street Reform and Consumer Protection Act (DFA), the Real Estate Settlement Procedures Act, 12 U.S.C. §§ 2601, *et seq.* (RESPA), and the Fair Debt Collection Practices Act, 15 U.S.C. §§1692, *et seq.* (FDCPA). This action is further specifically filed, in part, to enforce regulations promulgated by the Consumer Finance Protection Bureau (CFPB) that became effective on January 10, 2014, specifically, 12 C.F.R. §§ 1024.35 and 1024.36 of Regulation X of RESPA.

13.     This Court has supplemental jurisdiction to hear all state law claims pursuant to 28 U.S.C. § 1367.

14.     Venue lies in this District pursuant to 28 U.S.C. § 1391(b) as Colonni purchased the Home for her primary residence within the District, Ditech does business in this District, and the conduct complained of took place primarily in this District.

## SUMMARY OF CLAIMS

15.     In January 2013, the CFPB issued final rules concerning mortgage markets in the United States, pursuant to the DFA, Public Law No. 111-203, 124 Stat. 1376 (2010).

16.     Specifically, on January 17, 2013, the CFPB issued the RESPA Mortgage Servicing Final Rules, 78 F.R. 10695 (Regulation X) (February 14, 2013), which became effective on January 10, 2014.

17.     The Loan is a "federally related mortgage loan" as said term is defined by 12 C.F.R. § 1024.2(b).

18.     Ditech is subject to the aforesaid regulations and each does not qualify for the exception for "small servicers", as such term is defined in 12 C.F.R. § 1026.41(e)(4), nor the exemption for a "qualified lender", as such term is defined in 12 C.F.R. § 617.700.

19.     Plaintiff asserts a claim for relief against Ditech for breaches of the specific rules under Regulation X as set forth, *infra*.

20.     Plaintiff has a private right of action under RESPA pursuant to 12 U.S.C. § 2605(f) for the claimed breaches of Regulation X and such action provides for remedies including actual damages, costs, statutory damages, and attorney's fees.

21.     The FDCPA was enacted by Congress to prohibit the "[u]se of abusive, deceptive, and unfair debt collection practices." 15 U.S.C. § 1692a.

22. Ditech is a debt collector, Colonni is a consumer, and the Loan is a debt, as defined by the FDCPA.

23. Colonni asserts a private right of action against Ditech under the FDCPA, pursuant to 15 U.S.C. § 1692k, for Ditech's conduct in connection with collection of the Loan and Colonni is entitled to recover actual damages, statutory damages, costs, and attorneys' fees.

24. Colonni also asserts a private right of action against Ditech under CUTPA, Conn. Gen. Stat. § 42-110g, for Ditech's conduct in connection with collection of the Loan and Colonni is entitled to recover actual damages, statutory damages, costs, and attorneys' fees.

## STATEMENT OF FACTS

25. As with many other individuals throughout the country, Colonni fell under economic distress when she lost her employment as a result of the Financial Crisis, subsequently falling approximately eleven (11) months behind on the Loan.

26. On or about April 30, 2010, Colonni filed for Chapter 7 Bankruptcy protection in the U.S. Bankruptcy Court for the District of Connecticut through Bankruptcy Petition No. 10-21420 (the "Chapter 7 BK").

27. Colonni received a discharge in the Chapter 7 on or about August 10, 2010.

28. Subsequently, after recovering financially, and in an attempt to cure the arrearage on the Loan, and to work towards a fresh financial start whereby she could resume making timely mortgage payments under the Loan, Colonni filed for Chapter 13 Bankruptcy Protection on or about April 21, 2011 through Bankruptcy Petition No .11-21169 (the "Chapter 13 BK").

29. BAC Home Loan Servicing, LP ("BAC"), the prior servicer of the Loan, filed a proof of claim in the Chapter 13 BK on or about June 1, 2011, which was subsequently transferred to Ditech on or about June 19, 2013.

4

30.     On or about April 14, 2016, the Trustee for the Chapter 13 BK filed a *Notice of Final Cure Payment and Completion of Plan Payments* stating that the prepetition arrearage for the Loan had been fully paid and that Colonni had paid all funds necessary to cure any default under the Loan (the "Cure Notice"). *A copy of the Cure Notice is attached as Plaintiff's Exhibit 1.*

31.     Ditech responded to the Cure Notice on or about May 3, 2016, expressly acknowledging that Ditech "agrees that the debtor(s) have paid in the full the amount required to cure the prepetition default" on the Loan "agrees that the debtor(s) are current with all post-petition payments" (the "Cure Response"). *A copy of the Cure Response is attached as Plaintiff's Exhibit 2.*

32.     The Chapter 13 BK was subsequently closed on December 29, 2016.

33.     Following the filing of the Cure Notice and the Cure Response, Colonni continued remitting timely completely monthly periodic payments on the Loan in satisfaction of her obligations under the Loan.

34.     On numerous occasions, Ditech would claim that her Loan was current and that no monthly payment was due for the following one (1) or two (2) months, essentially stating that Colonni had paid ahead on her obligations.

35.     Colonni called Ditech multiple times to ascertain the reason as to why she did not have any funds due and owing for those months and would be informed that Ditech was still in the process of disbursing funds received from the Trustee through the Chapter 13 BK.

36.     Colonni did not make payments for the months of October 2016, November 2016, December 2016, and January 2017, as Ditech expressly informed her and confirmed with her via telephone that she did not owe any mortgage payments for those months.

37.     As of the payment received by Ditech on or about June 19, 2017, Colonni was current on the Loan through the payment due for July 1, 2017.

38.     Due to the confusion surrounding the accounting of her Loan, Colonni requested an actuarial payment history from Ditech, which Ditech provided on or about July 7, 2017 (the "July 2017 History"). *A copy of the July 2017 History is attached as Plaintiff's Exhibit 3.*

39.     The final entry on the July 2017 History consisted of the following transactions:

   a.     Misapplication Reversal in the amount of $832.92;

   b.     Misapplication Reversal in the amount of $1,310.23;

   c.     Misapplication Reversal in the amount of $6,217.90;

   d.     Misapplication Reversal in the amount of $1,310.23;

   e.     Misapplication Reversal in the amount of $1,310.23;

   f.     Misapplication Reversal in the amount of $1,310.23; and,

   g.     Misapplication Reversal in the amount of $1,310.23.

*See Exhibit 3.*

40.     On or about July 17, 2017, Ditech sent an "Informational Statement" for the Loan (the July 2017 Statement") which listed the following transactions since the prior statement, each dated June 23, 2017:

   a.     Misapplication Reversal in the amount of $832.92;

   b.     Misapplication Reversal in the amount of $1,310.23;

   c.     Misapplication Reversal in the amount of $6,217.90;

   d.     Misapplication Reversal in the amount of $1,310.23;

   e.     Misapplication Reversal in the amount of $1,310.23;

   f.     Misapplication Reversal in the amount of $1,310.23; and,

g.      Misapplication Reversal in the amount of $1,310.23.

*A copy of the July 2017 Statement is attached as Plaintiff's Exhibit 4.*

41.      At no point in the July 2017 History or the July 2017 Statement did Ditech indicate where or how the funds from these misapplication reversals, which totaled $13,601.96, were applied. *See Exhibits 3 and 4.*

42.      Further, Colonni, despite having made all payments that Ditech had requested and claimed were due and owing, began to receive notices that her loan was delinquent and that she qualified for loss mitigation options which would cure the delinquency.

43.      On or about July 24, 2017, Ditech sent correspondence to Colonni claiming that the Loan was in default and due for the April 1, 2017 payment and that she had to remit $6,622.20 to cure such default (the "Default Notice"). *A copy of the Default Notice is attached as Plaintiff's Exhibit 5.*

44.      Confused and wanting to ensure that she remained current on her obligations under the Loan, Colonni contacted Ditech via telephone to ascertain what was happening with the accounting of her Loan and to determine what amount was due and owing under her Loan.

45.      On or about the evening of July 31, 2017, Colonni spoke with a representative of Ditech identified as "Marcus" "Identification No. 23110" who informed Colonni that $6,434.46 was due under the Loan, said amount consisting of $5,124.23 in past due amounts owing plus the August mortgage payment of $1,310.23.

46.      Marcus stated to Colonni that she had failed to remit mortgage payments for the months of October 2016, November 2016, December 2016, and January 2017, and that she needed to send $6,434.46 to bring the Loan current.

47.     On or about August 4, 2017, Colonni attempted to remit the necessary funds to Ditech electronically, as she had done for the previous five (5) years but was informed on their website that her account was "not eligible for electronic payments" any longer.

48.     On or about August 6, 2017, Colonni sent Ditech a check in the amount of $6,434.46 and Ditech cashed the same on or about August 14, 2017.

49.     Despite remitting funds in the exact amount instructed to by Ditech, through Marcus, on August 15, 2017, Ditech sent correspondence captioned "NOTICE OF RECEIPT OF PARTIAL PAYMENT" thanking Colonni for her payment of $6,434.46 but stating that the Loan was still in default unless they receive an additional $187.74.

50.     Colonni attempted to ascertain the problems with the accounting with her Loan and have the same corrected by Ditech on her own for months following the closing Chapter 13 BK.

51.     When Colonni's individual attempts to have the accounting of her Loan corrected were unsuccessful, she sought the help of her counsel from the Chapter 7 BK and the Chapter 13 BK.

52.     On or about July 31, 2017, Colonni, through counsel, sent correspondence to Ditech via Certified U.S. Mail [Receipt No. 7017 0660 0000 1497 9007] which explicitly stated that it should be treated "as a 'notice of error' and 'request for information' pursuant to [RESPA]" ("RFI #1"). A copy of the RFI #1 is attached as *Plaintiff's Exhibit 6*.

53.     Through RFI #1, Colonni requested information surrounding the errors in the accounting of her Loan, and specifically regarding the misapplication reversals from June 2017 and Ditech's claim that the account is in default. *See Exhibit 6*.

54.     RFI #1 was sent to Ditech at the address designated by Ditech for receipt of requests for information and notices of error, which is:

Ditech Financial LLC
PO Box 6176
Rapid City, DS 57709-6176

(the "Designated Address"). See Ditech's pertinent website at: https://myaccount.ditech.com/Info/ContactUs/ (last visited Nov. 19, 2018). A printed version of this page is attached as *Plaintiff's Exhibit 7*.

55. Ditech received RFI #1 at the Designated Address on or about August 7, 2017. *A copy of the tracking information for RFI #1 from the website for the United States Postal Service (www.usps.com) is attached as Plaintiff's Exhibit 8.*

56. Ditech sent correspondence in response to RFI #1 on or about September 15, 2017 (the "Response to RFI #1"). *A copy of the Response to RFI #1 is attached as Plaintiff's Exhibit 9.*

57. Through Response to RFI #1, Ditech refused to respond to the request for "any notes created by personnel of Ditech reflecting communications with me about your claim that the account is in default" as requested through RFI #1, stating that "Internal servicing notes are considered to be proprietary and confidential information and will not be provided." *See Exhibit 9.*

58. Regarding Colonni's request in RFI #1 for "the reason for 'misass rev' items on the July 17, 2017 mortgage statement", Ditech stated through Response to RFI #1:

> 6.) Pursuant to your correspondence, a review of the account has determined that the account was recently removed from active bankruptcy status. When an account is active bankruptcy, adjustments may be made in order to bring the account in line with the court approved bankruptcy plan. When the bankruptcy has been discharged a reconciliation audit is completed to ensure the account has been appropriately credited for funds received during the bankruptcy. On June 23, 2017, 6 payments were reversed from the account as part of this process and a refund of $13,601.97 was processed. The reversal of the amounts previously applied to the account is listed on the July 17, 2017 monthly informational statement as "Misapp Rev", which means misapplied/reversed.

*See Exhibit 9.*

59. The explanation provided as to the misapplication reversals was nonsensical to Colonni and her counsel as no refund was ever received, and as it made little to no sense as to why Ditech would "refund" funds in such a manner as to place the Loan into a default status.

60.     As a result, Colonni expended significant time and effort with her counsel attempting to correct the problems with the accounting of her loans and utilized roughly Two Thousand Dollars ($2,000.00) in personal funds to hire the services of a forensic accountant to perform an audit on her Loan's accounting to determine where the $13,601.96 in reversed, missing funds went.

61.     On or about July 27, 2018, Colonni, through counsel, sent correspondence captioned "Request for Information Pursuant to 12 C.F.R. § 1024.36" to Ditech at the Designated Address via Certified U.S. Mail [Receipt No. 7014 2120 0003 0668 7904] ("RFI #2"). A copy of the RFI #2 is attached as *Plaintiff's Exhibit 10.*

62.     Through RFI #2, Colonni requested information related to the servicing of the Loan, specifically including the servicing notes that Ditech previously failed to provide through Response to RFI #1. *See Exhibit 10.*

63.     Ditech received RFI #2 at the Designated Address on or about August 3, 2018. *A copy of the tracking information for RFI #2 from the website for the United States Postal Service (www.usps.com) is attached as Plaintiff's Exhibit 11*.

64.     Ditech sent correspondence in response to RFI #2 on or about August 9, 2018 (the "Response to RFI #2"). *A copy of the Response to RFI #2 is attached as Plaintiff's Exhibit 12.*

65.     Through Response to RFI #2, Ditech refused to respond to the request for servicing notes for the Loan as requested through RFI #2, stating that "Internal servicing notes are considered to be proprietary confidential, burdensome, or immaterial to the servicing of the account." *See Exhibit 12.*

66.     After the forensic accountant Colonni hired confirmed that there were no corresponding entries for the misapplication reversals and that $13,601.96 that Colonni has

remitted to the Loan was simply missing from the Loan's accounting, on or about September 10, 2018, Colonni, through counsel, sent correspondence captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(3) for failure to properly apply accepted payments to principal, interest, escrow or other charges under the terms of the mortgage loan and applicable law; Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for improperly reversing payments under, and thereby unilaterally and materially breaching, the Loan; and, Notice of error pursuant to 12 C.F.R. § 1024.35(b)(11) for conversion of funds" to Ditech at the Designated Address via Certified U.S. Mail [Receipt No. 7014 2120 0003 0667 4638] ("NOE #1"). A copy of NOE #1 is attached as *Plaintiff's Exhibit 13.*

67.     Through NOE #1, Colonni alleged that Ditech committed roughly forty-nine (49) significant errors in their servicing of the Loan in their handling of the accounting of the Loan since the Chapter 13 BK. *See Exhibit 13.*

68.     Ditech received NOE #1 at the Designated Address on or about September 14, 2018. *A copy of the tracking information for NOE #1 from the website for the United States Postal Service (www.usps.com) is attached as Plaintiff's Exhibit 14.*

69.     On or about October 16, 2018, Colonni, through counsel, sent correspondence captioned "Notice of errors pursuant to 12 C.F.R. § 1024.35(b)(11) for failure to properly respond to a request for information in compliance with 12 C.F.R. §1024.36" to Ditech at the Designated Address via Certified U.S. Mail [Receipt No. 7014 2120 0003 0667 04881] ("NOE #2"). A copy of NOE #2 is attached as *Plaintiff's Exhibit 15.*

70.     Through NOE #2, Colonni alleged that Ditech committed an error in the servicing of the Loan by failing to provide the servicing notes for the Loan as requested previously by and through RFI #1 and RFI #2. *See Exhibit 15.*

71.     Ditech received NOE #2 at the Designated Address on or about October 22, 2018. *A copy of the tracking information for NOE #2 from the website for the United States Postal Service (www.usps.com) is attached as Plaintiff's Exhibit 16.*

72.     Ditech has not yet responded to NOE #2.

73.     On or about October 26, 2018, Ditech sent correspondence in response to NOE #1 (the "Response to NOE #1"). *A copy of the Response to NOE #1 is attached as Plaintiff's Exhibit 17.*

74.     Through the Response to NOE #1, Ditech admitted that "the funds reversed off the account on 6/23/17 were determined to be misapplied" and that Colonni had essentially been caused to overpay the Loan by $5,153.77. *See Exhibit 17.*

75.     Through the Response to NOE #1, Ditech seems to have partially corrected the errors to the extent that the payments were reapplied properly, however, Ditech has not returned the Borrower to *status quo ante* and will only compensate Colonni for her damages over the past year in the amount of $750.00, which is woefully insufficient to compensate her for her losses in attempting to have the errors corrected as it would not even compensate Colonni for the funds paid for the accounting work performed on her Loan, and Ditech will only do so if she signs a release agreement for all potential claims against Ditech. *See Exhibit 17.*

## IMPACT AND DAMAGE

76.     Ditech's actions in failing to properly handle the accounting for the Loan caused Colonni to incur fees and costs for a forensic accountant to review her Loan and for attorneys' fees and costs to attempt to obtain information and correct errors.

77.     Ditech directly and proximately caused the following damages to Colonni:

12

      a.      Colonni had to pay more than $2,000.00 to a forensic accountant to review the accounting for the Loan to determine where the $13,601.96 in missing funds went and to try to figure out why she was being told she was in default despite consistently paying the amounts instructed;

      b.      She had to retain and pay legal counsel to submit RFI #1, RFI #2, NOE #1, and NOE #2, as well as other requests for information to Ditech and pay postage costs for the mailing of said notices of error and requests for information;

      c.      Colonni has suffered the time loss of at least $5,153.77 over the course of more than one (1) year due to her good faith compliance with Ditech's demands for overpayment on the Loan as well as of an additional $4,163.03 that was applied to the principal of the Loan because of Ditech's accounting errors despite a lack of intent from Colonni for her funds to be applied as such; and,

      d.      She suffered emotional distress directly and proximately caused by Ditech's actions in failing to properly handle their accounting of the Loan, their primary duty as the servicer of the Loan. She lived in fear of going into foreclosure despite consistently paying the amounts asked by Ditech and despite having done everything required of her to have a fresh financial start as a result of the Chapter 7 BK and the Chapter 13 BK.

78.     Throughout this entire ordeal, Colonni has simply wanted to reap the benefits of her completion of the Chapter 7 BK, the Chapter 13 BK, and her timely payments on the Loan since, and continue to make timely, proper payments on the Loan in order to continue the rehabilitation of her credit, and most importantly, remain in the Home.

## PATTERN AND PRACTICE OF REGULATION X VIOLATIONS BY DITECH

79.     Ditech's actions are part of a pattern and practice of behavior in violation of Colonni's rights and in abdication and contravention of Ditech's obligations under the mortgage servicing regulations set forth in Regulation X of RESPA.

80.     At the time of the filing of this Complaint, Ditech has had at least Five Thousand Nine Hundred Eighteen (5,918) consumer complaints lodged against it nationally, specifically concerning the issue identified on the CFPB's consumer complaint database as "loan servicing, payments, escrow account" related to mortgages. Each such complaint is filed and cataloged in the CFPB's publicly accessible online database. (https://www.consumerfinance.gov/data-research/consumer-complaints/).

81.     Colonni has reviewed the CFPB's consumer complaint database and has identified other alleged RESPA violations by Ditech against other borrowers. In particular, Colonni has reviewed the fifteen (15) consumer complaints attached hereto and identified as *Plaintiff's Group Exhibit 18*. The date, details, and a narrative disclosed by the consumer is set forth in each complaint. The complaints evidence conducts which demonstrates that Ditech has engaged in a pattern and practice of violating RESPA with respect to other borrowers.

## COUNT ONE: VIOLATIONS OF 12 C.F.R. § 1024.36(d)

### (Failure to properly respond to RFI #1 and RFI #2)

82.     Colonni restates and incorporates herein all her statements and allegations contained in the paragraphs 1 through 81 in their entirety, as if fully rewritten.

83.     12 C.F.R. § 1024.36(a) provides that "[a] servicer shall comply with the requirements of this section for any written request for information from a borrower that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage

loan account, and states the information the borrower is requesting with respect to the borrower's mortgage loan."

84.   Comment 1 of the Official Interpretations of the CFPB to 12 C.F.R. § 1024.36(a) provides that "[a]n information request is submitted by a borrower if the information request is submitted by an agent of the borrower."

85.   12 C.F.R. § 1024.36(d)(1) provides that:

> Except as provided in paragraphs (e) and (f) of this section, a servicer must respond to an information request by either: (i) Providing the borrower with the requested information and contact information, including a telephone number, for further assistance in writing; or (ii) Conducting a reasonable search for the requested information and providing the borrower with a written notification that states that the servicer has determined that the requested information is not available to the servicer, provides the basis for the servicer's determination, and provides contact information, including a telephone number, for further assistance.

86.   12 C.F.R. § 1024.36(d)(2)(i) provides that "A servicer must comply with the requirements of paragraph (d)(1) of this section: (A) Not later than 10 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives an information request for the identity of, and address or other relevant contact information for, the owner or assignee of a mortgage loan; and (B) For all other requests for information, not later than 30 days (excluding legal public holidays, Saturdays, and Sundays) after the servicer receives the information request."

87.   12 C.F.R. § 1024.36(f)(1) provides:

> A servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section if the servicer reasonably determines that any of the following apply:
> (i) *Duplicative information.* The information requested is substantially the same as information previously requested by the borrower for which the servicer has previously complied with its obligation to respond pursuant to paragraphs (c) and (d) of this section.

15

(ii) *Confidential, proprietary or privileged information.* The information requested is confidential, proprietary or privileged.

(iii) *Irrelevant information.* The information requested is not directly related to the borrower's mortgage loan account.

(iv) *Overbroad or unduly burdensome information request.* The information request is overbroad or unduly burdensome. An information request is overbroad if a borrower requests that the servicer provide an unreasonable volume of documents or information to a borrower. An information request is unduly burdensome if a diligent servicer could not respond to the information request without either exceeding the maximum time limit permitted by paragraph (d)(2) of this section or incurring costs (or dedicating resources) that would be unreasonable in light of the circumstances. To the extent a servicer can reasonably identify a valid information request in a submission that is otherwise overbroad or unduly burdensome, the servicer shall comply with the requirements of paragraphs (c) and (d) of this section with respect to that requested information.

88.     12 C.F.R § 1024.36(f)(2) provides that "If a servicer determines that, pursuant to this paragraph (f), the servicer is not required to comply with the requirements of paragraphs (c) and (d) of this section, the servicer shall notify the borrower of its determination in writing...The notice to the borrower shall set forth the basis under paragraph (f)(1) of this section upon which the servicer has made such determination."

89.     RFI #1 and RFI #2 (collectively the "RFIs") are each a request for information pursuant to 12 C.F.R. § 1024.36(a). *See Exhibits 6 and 10.*

90.     Colonni sent each of the RFIs to Ditech at the address Ditech designated for the receipt of such requests pursuant to 12 C.F.R. § 1024.36(b). *See Exhibits 6, 7, 10 and 11.*

91.     Ditech received each of the RFIs at the address Ditech designated for the receipt of such requests pursuant to 12 C.F.R. § 1024.36(b). *See Exhibits 7 and 11.*

92.     By and through each of the RFIs, Colonni sought, among other items, notes related to communications and the servicing of the loan, also known as servicing notes. *See Exhibits 6 and 10.*

93.     Ditech responded to RFI #1 and RFI #2 through the Response to RFI #1 and the Response to RFI #2, respectively. *See Exhibits 9 and 12.*

94.     The Response to RFI #1 and the Response to RFI #2 failed to comply with the requirements of 12 C.F.R. § 1024.36 as it failed to provide all of the requested information, namely the servicing notes, or to otherwise provide a valid basis as to why Ditech did not have to supply such information. *See Exhibits 9 and 12.*

95.     Ditech failed to provide the servicing notes requested through RFI #1 and RFI #2. *See Exhibits 6, 9, 10, and 12.*

96.     Rather, Ditech's responses stated that the servicing notes confidential and proprietary and that they would not provide such information which was neither accurate nor proper pursuant to 12 C.F.R. § 1024.36(f). *See Exhibits 9 and 12.*

97.     Ditech's actions in failing to fully and properly respond to each of the RFIs constitute two (2) clear violations of 12 C.F.R. § 1024.36, one such violation for each of the RFIs to which Ditech failed to properly respond.

98.     Ditech's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Colonni's rights.

99.     As a result of Ditech's failure to properly respond to each of the RFIs, Colonni suffered actual damages as detailed, *supra*, including, but not limited to incurring fees and costs in the preparation and mailing of subsequent requests for information and notices of error such as

RFI #2 and NOE #2 which would not have been necessary but for the failure of Ditech to respond to RFI #1 and RFI #2.

100.    As a result of Ditech's actions, Ditech is liable to Colonni for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT TWO: VIOLATION OF 12 C.F.R. § 1024.35(e)

### (Failure to adequately correct errors asserted through NOE #1)

101.    Colonni restates and incorporates all her statements and allegations contained in paragraphs 1 through 81, in their entirety, as if fully rewritten herein.

102.    12 C.F.R. § 1024.35(a) provides that "[a] servicer shall comply with the requirements of this section for any written notice from the borrower that asserts an error and that includes the name of the borrower, information that enables the servicer to identify the borrower's mortgage loan account, and the error the borrower believes has occurred."

103.    Comment 1 of the CFPB's Official Interpretations of 12 C.F.R. § 1024.35(a) provides that "[a] notice of error is submitted by a borrower if the notice of error is submitted by an agent of the borrower.

104.    Pursuant to 12 C.F.R. § 1024.35(b)(11), the term "error" refers to any error, not otherwise specified in 12 C.F.R. §§ 1024.35(b)(1) to 1024.35(b)(10), committed in regards the borrower's mortgage loan.

105.    12 C.F.R. § 1024.35(e)(1)(i) provides that a servicer must respond to a notice of error by either:

> (A) Correcting the error or errors identified by the borrower and providing the borrower with a written notification of the correction, the effective date of the correction, and contact information, including a telephone number, for further assistance; or

(B) Conducting a reasonable investigation and providing the borrower with a written notification that includes a statement that the servicer has determined that no error occurred, a statement of the reason or reasons for this determination, a statement of the borrower's right to request documents relied upon by the servicer in reaching its determination, information regarding how the borrower can request such documents, and contact information, including a telephone number, for further assistance.

106.    NOE #1 meets the requirements of a notice of error as defined by 12 C.F.R. § 1024.35(a). *See Exhibit 13.*

107.    Colonni sent the NOE to Ditech at the address Ditech designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibits 13 and 14.*

108.    Ditech received the NOE at the address Ditech designated for the receipt of such notices pursuant to 12 C.F.R. § 1024.35(c). *See Exhibit 14.*

109.    Through NOE #1, Colonni alleged that Ditech committed forty-nine (49) significant errors in their servicing of the Loan in their handling of the accounting of the Loan since the Chapter 13 BK including, the misapplication of payments, conversion of $13,601.96, and the imposition of late fee Ditech had no reasonable basis to impose. *See Exhibit 13.*

110.    Ditech claimed to have corrected the errors alleged by and through the Response to NOE #1, however, Ditech refuses to put Colonni in a position of *status quo ante* offering only to compensate her $750.00 in exchange for a complete release of liability for any claims. *See Exhibit 13.*

111.    Colonni has suffered far greater than $750.00 in damages having paid more than $2,000.00 in accounting fees, incurring legal fees and expenses, and suffering the time loss of at least $5,153.77 over the course of more than one (1) year due to her good faith compliance with Ditech's demands for overpayment on the Loan as well as of an additional $4,163.03 that was

applied to the principal of the Loan because of Ditech's accounting errors despite a lack of intent from Colonni for her funds to be applied as such—Ditech has not offered to adjust or return such funds in the Response to NOE #1.

112.   To date, Ditech has failed to adequately correct the errors asserted by and through NOE #1 or to claim that no such errors occurred.

113.   Ditech's failure to adequately correct the errors alleged in NOE #1 constitutes clear, separate, and distinct violation of 12 C.F.R. § 1024.35(e).

114.   Ditech's actions caused Colonni to suffer actual damages as further described, *supra.*

115.   Ditech's actions are believed to be part of a pattern and practice of behavior in conscious disregard for Colonni's rights.

116.   As a result of Ditech's actions, Ditech is liable to Colonni for actual damages, statutory damages, costs, and attorneys' fees.

## COUNT THREE: VIOLATION OF FDCPA

### (Violation of the FDCPA, 15 U.S.C. §1692k)

117.   Colonni restates and incorporates all her statements and allegations contained in paragraphs 1 through 81, in their entirety, as if fully rewritten herein.

118.   Ditech took the actions described, *supra,* to collect a debt represented by the Loan.

119.   Ditech repeatedly and continuously misrepresented the status of the Loan, the balance due under the Loan, and Colonni's monthly payment obligation. Ditech failed and refused to adequately correct its errors when they were brought to its attention through NOE #1 and through multiple telephone calls directly from Colonni.

120.   Ditech violated 15 U.S.C. §1692(f) because its conduct as outlined herein constitutes an unconscionable means to collect or to attempt to collect a debt.

121.   Ditech violated 15 U.S.C. §1692(d) by employing an unfair and unconscionable means to collect the subject debt.

122.   As pled, *supra*, Colonni has been harmed by and continues to suffer from harm resulting from the unfair and deceptive practices of Ditech in wrongfully breaching the Loan and by refusing to adequately correct their errors in the servicing of the Loan the Response to NOE #1.

123.   Colonni was compelled to retain a forensic accountant to attempt to locate the funds from the misapplication reversals and was subsequently compelled to retain counsel send RFI #1, RFI #2, NOE #1, and NOE #2, to review the responses to the same, and once Plaintiff had exercised all reasonable options at her disposal, the filing of the instant proceeding.

124.   Ditech's conduct has caused Colonni to suffer damages as outlined *supra*, as well as emotional distress driven by the fear that she might again fall behind in her payments and be at risk of losing her Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

125.   Ditech's conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for Colonni's rights.

## COUNT FOUR: VIOLATION OF CUTPA

### (Violation of CUTPA, Conn. Gen. Stat. § 42-110)

126.   Colonni restates and incorporates all her statements and allegations contained in paragraphs 1 through 81, in their entirety, as if fully rewritten herein.

127.   At all times relevant, Ditech was engaged in a trade or commerce as defined under CUTPA.

128.   Ditech took the actions described, *supra*, in an attempt to collect a debt represented by the Loan.

129.   Ditech repeatedly and continuously misrepresented the status of the Loan, the balance due under the Loan, and Colonni's monthly payment obligation. Ditech failed and refused to adequately correct its errors when they were brought to its attention through NOE #1 and through multiple telephone calls directly from Colonni.

130.   Ditech's actions constitute unfair and deceptive practices within the meaning of CUTPA, as such practices offend public policy, are unfair, immoral, unethical, oppressive, or unscrupulous and have caused and continue to cause injury to Colonni.

131.   Ditech's conduct has caused Colonni to suffer damages as outlined *supra*, as well as emotional distress driven by the fear that she might again fall behind in her payments and be at risk of losing her Home which has resulted in loss of sleep, anxiety, depression, embarrassment, and other significant emotional distress.

132.   Ditech's conduct, as pled, *supra*, was outrageous, willful, and wanton, and it showed a reckless disregard for Colonni's rights which warrants punitive damages.

### **PRAYER FOR RELIEF**

**WHEREFORE** Plaintiff Dawn Colonni, respectfully requests that this Court enter an order granting Judgment against Defendant Ditech Financial, LLC, as follows:

    a.  For actual damages against Defendant as to all allegations contained in Counts One through Four;

    b.  For statutory damages of Two Thousand Dollars ($2,000.00) against Ditech against Defendant for each violation of 12 C.F.R. § 1024.36 as alleged in in Count One;

    c.  For statutory damages of Two Thousand Dollars ($2,000.00) against Ditech against

Defendant for each violation of 12 C.F.R. § 1024.35 as alleged in in Count Two;

d.  For statutory damages of One Thousand Dollars ($1,000.00) against Defendant for each violation contained in Count Three;

e.  For punitive damages pursuant to Conn. Gen. Stat. § 42-110a, *et seq.*;

f.  For costs and reasonable attorney fees against Defendant as to all allegations contained in Count One through Four; and,

g.  For all other relief this Court may deem just and proper.

Dated: Groton, Connecticut                Respectfully Submitted,

/s/ David F. Falvey
David F. Falvey (ct08516)
Action Advocacy PC
One Crouch Street
Groton, CT 06340
Telephone: (860) 449-1510
Facsimile: (860) 449-8046
Email: office@actionadvocacy.com
Counsel for Plaintiff

23